## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF FLORIDA

## TAMPA DIVISION

**CHARMAINE SAUNDERS**, an individual,

Plaintiff,

Vs                                          **Case No.: 8:22-CV-2482-MSS-JSS**

**CITY OF LAKELAND, FLORIDA,**
**LAKELAND POLICE DEPARTMENT,**
**MAYOR WILLIAM "BILL" MUTZ, in his**
**official capacity; CHIEF RUBEN GARCIA,**
**in his official capacity; and DETECTIVE**
**CHRISTINA STEWART in her official capacity,** Defendants.

_____/

## PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

NOW COMES Plaintiff, **CHARMAINE SAUNDERS**, ("Saunders") who files this 'Opposition to Defendants Motion to Dismiss Plaintiff's Second Amended Complaint' [DKT 21-2] as a Pro Se litigant. Plaintiff contends her complaint does in fact state sufficient factual claims whereby relief can be granted. Plaintiff further affirms the causes of action against the Defendants fall under federal and state violations by which relief can be sought. Plaintiff states the particular section under 18 U.S. Code § 242 - Deprivation of rights under color of law and 42 U.S. 1981 and 1983. Rule 12(b)(6) provides that parties may assert by motion a defense based on "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6), Defendants is misusing this rule to garner

1

a dismal. Plaintiff contends Defendant Detective Christina Stewart in her official capacity for the Lakeland Police Department, an arm of the City of Lakeland acted with malice, discrimination and with bias under her authority and badge as a Sworn Peace Officer. Plaintiff further contends this behavior was immediately evident at the onset of the investigation of her violent sexual assault. Plaintiff sought administrative remedies almost immediately through senior law enforcement officials of the Lakeland Police Department, including Detective Stewart's superior Sergeant Boone, then former Chief Ruben Garcia, Internal Affairs, and the City Commission namely Mayor William Mutz and Commissioner Stephanie Madden. This action by Plaintiff to engage other officials of the Police Department and the City of Lakeland's local government officials was the stated process posted on LPD's website for complaints and internal affairs request prior to the summons of this lawsuit being served on the Police Department and the City of Lakeland. These are legitimate claims by which relief can be sought. Defendants suggest Plaintiff second amended complaint is difficult to understand and contains pitfalls, Plaintiff disagrees.

Plaintiff contends what is difficult to understand is defendants inability to offer legally sound reasons to the actions of the named defendants in this suit, the 'pitfalls' that defendants are referring to, Plaintiff alleges they were dug by defendants when they determined the outcome of a criminal investigation before it began, it was dug when Detective Stewart in so much as admitted to plaintiff almost five (5) months after the violent sexual attack occurred that correct investigatory protocols were not followed by the Police Department. The crater of a "pitfall" dug by detective Stewart was her decision

2

to delete portions of the video and truncating the remaining parts of the Applebee's surveillance of the night of Plaintiff's violent assault. Plaintiff alleges and believes this action was to benefit the attacker and the Applebee's brand, and the city of Lakeland as a business destination and community. All the aforementioned, constitutes actions by which relief can be sought and warrants further legal, judicial investigations.

Further, Plaintiff contends and does state that in Detective Stewart's official capacity, she set in motion violations of law under section 42 U.S. Code § 1981, 1983. Plaintiff intends to prove how each and all Defendants are culpable and complicit in these violations and allege cover up.  For these reasons Plaintiff respectfully submit, the Court should deny Defendants Motion to Dismiss.

In recent times, The Rule 12(b)(6) test has been revisited. In Conley v. Gibson, 355 U.S. 41 (1957), the Supreme Court stated the interplay between Rule 8 (pleading) and Rule 12(b)(6) as follows: "[T]he accepted rule [is] that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of her claim which would entitle her to relief." 355 U.S. at 45-46. In Bell Atlantic Corporation v. Twombly, 55 U.S. 544 (2007), the Court noted questions raised regarding the "no set of facts" test and clarified that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," id. at 563. It continued: "Conley, then, described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival."  Plaintiff respectfully submit, the Court should deny Defendants Motion to Dismiss. The Defendants filed their

3

Motion to Dismiss on 01/24/2023 and made the following grounds to dismiss the

Plaintiff's second amended complaint.

1. *In Plaintiff's Count One, the plaintiff impermissibly attempts to impute liability to the City of Lakeland and LPD based only on Detective Stewart's alleged conduct. Furthermore, Plaintiff's claims against Detective Stewart are barred by the doctrine of qualified immunity.*

   **Title VI prohibits discrimination based on race, color, national origin under any program receiving Federal Assistance. Title VI bars intentional discrimination, 42 U.S.C. § 2000d**

2. *In Plaintiff's Count Two, Plaintiff's claims under the Florida Civil Rights Act failed to allege that she has exhausted her administrative remedies and further fail to allege the elements required to state a claim under that statute.*

**Plaintiff contends the civil rights violation she suffered at the hands of Detective Stewart and the Defendants collectively supersedes state statues and violates federal laws. People who work for the government (be it local) hold substantial authority due to their position, but this authority is not unlimited. Government officials and employees generally cannot violate the civil rights of people who interact with them. Someone who has suffered a violation of their civil rights at the hands of a state or local government official can bring a Section 1983 claim. Section 1983 (42 U.S.C. Section 1983) is a federal law that allows citizens to sue in certain situations for violations of rights conferred by the U.S. Constitution or federal laws.**

3. *In Plaintiff's Count Three, Plaintiff fails to allege facts sufficient to support an inference of discriminatory intent by either defendant.*

   **At the very first in person meeting/interrogation with Detective Stewart, Detective Stewart stated unequivocally to Plaintiff that there would be no criminal charges against the Caucasian felon assailant. This statement was made prior to the evidence being processed or due process. The crime was reported to Lakeland Police by an educated, black female without any criminal history, the perpetrator, a known felon with an extensive violent history.**

4. *In Plaintiff's Count Four Plaintiff seeks "multiple damages," including punitive damages, for each of her claims. However, punitive damages are not available for the causes of action asserted in Counts One and Two and she has failed to state a claim for each of the three preceding counts. Thus, Count Four cannot survive without an underlying cause of action on which to base an award of damages.*

   **Punitive damages are applicable when defendants' actions are grossly negligent and intentional. One analysis by the Supreme Court on punitive damages is the criteria of the egregiousness of the defendants conduct. Tampering with evidence, being untruthful as a sworn officer, racial bias, deliberating delaying a criminal investigation, maligning Plaintiff reputation and negatively impacting Plaintiff's professional career and future earning potential, divulging confidential and private case matter details to Plaintiff's former coworkers are only a small percentage of the egregious conduct of**

Detective Stewart and the named defendants. Plaintiff implores this Court to deny defendant's motion to dismiss and allow Plaintiff to prove the full extent of the gross, and intentional negligence of Detective Stewart and the collaborative efforts of the named Defendants to cover it up, and ignore Plaintiff's multiple requests for intervention. Plaintiff seeks to substantiate and prove these actions are not isolated but a culture within the Lakeland Police Department warranting further judicial review. On or about November 2022 Detective Stewart stated the State Attorney of Polk County elected not to pursue the case due to a lack of evidence. This begs the question where is the evidence collected from Plaintiff's residence on August 4th, 2021. See Exhibit 1

5. *Plaintiff's second amended complaint is a short gun pleading.*

Defendants original request to dismiss was grounded on the reason that Pro Se Plaintiff's complaint was a shot gun pleading. The Eleventh Circuit recently reaffirmed its stance on shotgun pleadings, reiterating in *Barmapov v. Amuial* that district courts are within their discretion to dismiss with prejudice a shotgun pleading filed by a litigant who is represented by counsel and fails to request leave to amend, so long as the court has given him at least one chance to replead. Plaintiff requested leave to amend and subsequently amended the complaint to be more succinct and meritorious. Defendants opted for a second baseless motion to dismiss instead of moving for a more definitive statement under Rule 12(e) even if it was a

**legitimate motion to dismiss under a shot gun pleading. Plaintiff alleges these actions by Defendants are to hinder or stop Plaintiff from supporting her claims by factually sound, evidence-based documentation.**

Plaintiff alleges and seeks to prove the defendants' legal maneuvering is for the purpose of delaying and of preventing this suit to be heard and supporting evidence suppressed by the case never making it to trial. The facts of this law suit are solid. The plaintiff was rendered incapacitated for the sole purpose of a violent sexual assault, and sodomy. Plaintiff alleges and believes the incident was the end result of a crime being planned in advance, while been watched and privacy rights violated repeatedly at her apartment complex in preparation for her assault. When this crime was reported, Defendants had a duty under the law to not see the victim's **COLOR**, but instead Defendants chose to act under **Color of Law.** Plaintiff contends, all named Defendants are liable in this suit and such bear responsibility to answer in this civil lawsuit. Further, Plaintiff supports her claim that all Defendants should be jointly held responsible for relief to Plaintiff for every legal claim set out in this civil suit.

## STATEMENTS OF FACTS

1. The defendants alleged that the plaintiff has no legal claim against which the relief can be granted. In Bell Atlantic Corporation v. Twombly, 55 U.S. 544 (2007), the Court noted questions raised regarding the "no set of facts" test and clarified that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Defendants alleged.

Here Plaintiff request that Court consider she did in fact follow the chain of command for administrative relief. Plaintiff engaged repeatedly with no response those in position of authority with the Police department and the City of Lakeland, only to be discarded and ignored. Plaintiff did not immediately bring this case before the Courts, as a matter of fact, it was approximately 454 days before Plaintiff engaged the Middle District of Florida Courts. Plaintiff wrote countless letters, made countless phone calls, hired a Private Investigator to go through "law enforcement doors" and have conversations with Lakeland Police Department that Plaintiff as a black female was denied entering.

Plaintiff indeed sought administrative remedies and followed the resolution processes documented by The Lakeland Police Department. Further, Plaintiff sought medical help within 48 hours after the assault of Tuesday July 27th, 2021. It was Thursday July 29th, 2021 when Plaintiff first spoke to medical personnel. Plaintiff received a video Tele-Med visit due to the Covid-19 Pandemic on Friday July 30th, 2021. It was during this virtual medical visit preventative medications were called into a local pharmacy for treatment to begin immediately to abate any medical consequences of the violent sexual assault. The first in person follow up appointment was on August 4, 2021. Plaintiff was then directed to go to the emergency room by the office medical staff so that the incident could be properly documented with a rape kit.

2. At the hospital Plaintiff advised the intake nurse the reason she was there to be examined. The hospital nurse notified the onsite LPD officer. The Plaintiff

8

reported the crime of sexual assault to the on-site Lakeland Police Officer see (**Exhibit 2**), and it was assigned to Detective Stewart, SVU. The officer took Plaintiff's statement and she advised the officer of the name of the local Lakeland business where the assault began. The officer advised he needed to call his Sergeant; Plaintiff was later told a Sergeant from Lakeland Police Department would come to speak with her. After sometime the male Sergeant arrived and it was a second recount, almost an interrogation by the Sergeant at the hospital. The Sergeant stated they needed Plaintiff's house keys to check the Plaintiff's home before the Plaintiff got there. Plaintiff forgot the alarm was set to on and inadvertently did not provide the Sergeant the alarm code. LPD had to wait for Plaintiff's arrival from the hospital due to the alarm being triggered and sounding off. The sergeant called the crime scene unit out and evidence was collected.

3.  Defendant Stewart failed to perform her legal duties and without any reasonable legal justification for not doing so, Plaintiff seeks to prove the allege reasons for Detective Stewarts egregious actions, as race based. The Plaintiff began reporting these actions by Detective Stewart to the then Police Chief Ruben Garcia, and Internal Affairs. In part this was due to the inconsistencies in the limited communication with Detective Stewart, the unanswered repeated attempts to get a status on the investigation, a copy of the police report which under the Florida Victims' Rights Statue afforded Plaintiff a copy. Plaintiff requests were ignored. As a result, Plaintiff wrote to the mayor whom she had met on more than one occasion. The subsequent actions and inactions of all Defendants individually and

collectively further justifies each Defendant being named in this civil suit. The

Plaintiff provided the basis for this claim that proves the negligence, breach of the

legal duty of the defendants, and the violations and deprivation of the legal rights

of the Plaintiff. Title VI prohibits discrimination based on race, color, national

origin under any program receiving Federal Assistance. Title VI bars intentional

discrimination, 42 U.S.C. § 2000d. See Guardians Ass'n v. Civil

Serv. Comm'n, 463 U.S. 582, 607–08 (1983); Alexander v. Choate, 469 U.S. 287,

292–93 (1985).

4.  Plaintiff implores this Court not to grant Defendants Motion to Dismiss but rather

allow Defendants to present evidence to substantiate their position or disprove

Plaintiffs claims. Defendants have not provided any sound basis that Plaintiff's

violent assault did not occur, nor that the actions of Detective Christina Stewart

did not transpire as Plaintiff has laid out, nor has the Defendants brought forward

any details supporting that the investigation was handled with integrity, equality,

void of bias, moved expeditiously, was compliant with Article 1 section 16(b) of

the Florida Constitution, or that the investigation  upheld the standards and oath of

law enforcement officers being void of discriminatory practices. In Plaintiff's

complaint, there are a number of facts and legal claims against which Plaintiff

reserves the right to claim relief. Detective Stewart on August 6th, 2021

predetermined that the criminal act against Plaintiff, which led to the basis of this

lawsuit, would not move through the criminal justice system. Further on August

6th, 2021, Detective Stewart purposefully moved Plaintiff into a room without

video surveillance after the videotaped interrogation and instructed Plaintiff to make multiple back-to-back calls and text to her violent attacker. Plaintiff objected and advised Detective Stewart that it was uncomfortable, especially after leaving a degrading, accusatory victim interrogation. Behind her badge, and as a representative of the Lakeland Police Department and the City of Lakeland, Detective Stewart made that unjust decision for all named Defendants. (**See Exhibit 3.**)

5. The defendants claimed that Detective Stewart is protected under qualified immunity, is a reckless statement at minimum. The Court here should note that a government employee is not protected under qualified immunity against gross negligence and misconduct. Detective Stewart committed gross negligence and misconduct by an officer of the law. Detective Stewart in her official capacity predetermined there would be no criminal charges against Plaintiff's attacker, a Caucasian with male with an extensive criminal history. Detective Stewart advised Plaintiff she did not retrieve the video surveillance of the crime against Plaintiff when in fact Detective Stewart did have the digital evidence in her possession.

The "Qualified Immunity" theory asserts when an officer must make quick decisions that are reasonable but the end result is flawed, it absolves the officer from liability. Discriminatory actions are not reasonable nor are they quick decisions, racism is not a quick decision, determining a victim's truth meter based on race is not a quick decision, ignoring a victim's plea for justice or help is not a quick decision. I submit it is a state of mind, a pattern of behavior birth in

11

discrimination and racism. These are not quick actions as "qualified immunity" references. These are patterns of undesirable, and unjust behaviors that should be reformed. Defendant Stewart at the start of the investigation did nothing to hide her position that she believed the attacker Mr. Smith was innocent. Detective Stewart unapologetically verbally accused Plaintiff in the interrogation room on August 6th, 2021 as if the assault was happening all over again for the second time and that Plaintiff asked for it because she was lonely. Plaintiff pleas to this Court to deny the Motion to Dismiss for the opportunity for her to prove the aforementioned statements.

6. Central to this civil suit are the important facts about the Defendants handling of the investigation from the onset and the evidence handling. The evidence collected by Lakeland Police Crime Scene Unit were a bloody comforter, the top layer of the bedding which was bloodied by Plaintiff's blood, Plaintiff asserts vehemently she does not sleep on her top comforter, moreover purposefully ruin it with her own blood, matching sheet set flat, and fitted sheets, hair strands other than Plaintiffs, matching pillow cases, dress, underwear, pictures of parts of Plaintiff's body, a decorative towel Plaintiff never uses, and Buccal Swab for lab analysis taken on August 4th, 2021. Defendant Stewart claimed on more than one occasion that Florida Department of Law Enforcement Analysis lab was running behind as the reason for almost one year of delay, no police reports, or records and no update available on the evidence analysis. (**Exhibit 4**). On or about the beginning of November 2021 Plaintiff made it known to Detective Stewart that she believed

Detective Stewart was not investigating her case but was investigating her. Plaintiff further stated she did not believe Detective Stewart submitted the evidence to FDLE or retrieved a DNA sample from Jeremy Smith to compare to the Strawberry Blond Hair Plaintiff found on her bedding July 28th, 2021 the day after the assault. Detective Stewart did not respond to the evidence statement but did respond that she was not sure if Jeremy Smith would consent to a DNA swab.

7. Detective Stewart in advertently admitted to tampering with evidence in Plaintiff's case. Plaintiff had long suspected the handling of her case was not in line with normal police procedures. Eventually, Detective Stewart invited Plaintiff to come to the station to view the video surveillance footage from the night of the assault and where the incident began. Detective Stewart stipulated that Plaintiff could only come to the Police Department at night to view the footage. Immediately Plaintiff remembered Sandra Bland Waller County, Texas and respectfully declined the detective's long-awaited update to come in at night. Based on Plaintiff's response to this invite, Detective Stewart began branding Plaintiff as an "uncooperative witness." Plaintiff's position, she is a living witness.

8. The defendant Detective Stewart denied having the video surveillance of the events at the restaurant on the incident night of July 27, 2021, but the restaurant manager called Plaintiff and provided information that was contradictory to the Detective's statement. Plaintiff requested Surveillance of the red-light cameras at the intersection of Plaintiffs former apartment where the assault culminated, only to be told there were no functioning cameras. (**Exhibit 5**). Plaintiff took snapshots

13

of the cameras. The theory of qualified immunity does not protect misconduct. These facts prove that the defendant committed gross negligence, Plaintiff did not keep these allegations hidden from and the City of Lakeland's elected officials, nor the Police Chief. Rather the actions and inactions suggest the Police Department, City Officials, those in Supervisory and Investigatory Authority sought to keep Plaintiff's case hidden for a number of key reasons Plaintiff seeks the opportunity to present at trial. Plaintiff believes the Assailant and the Detective actions were protected and retaliatory actions initiated against the Plaintiff.

9.  This is a misrepresentation with mala fide intention by the Defendants before this Court that the Plaintiff did not use the administrative remedy before seeking justice in the Middle District of Florida Tampa Division is preposterous. The plaintiff pleaded directly to Detective Stewart, to the Mayor of the City of Lakeland William Mutz, then Chief of Police Ruben Garcia, Sergeant Boone detective's Stewart superior was on almost every email to Detective Stewart, a personal letter was sent to Commissioner Stephanie Madden not only as an elected official, but as a woman and a mother Plaintiff implored her to help move the police department to investigate, Plaintiff reached out to others in supervisory positions; Supervisory in the records department and the internal affairs leadership with the police department to investigate the crime committed against Plaintiff, the misconduct and gross negligence.  This was a repeated plea by Plaintiff over the course of four hundred and fifty-four days **(454).** The time from my first statement to The Lakeland Police department to filing this civil suit.

14

10. Instead to provide the legal remedies, and relief against the sexual assault and rape the defendants with their mutual conspiracy and with mala fide intentions released the plaintiff's background information on the world wide web. This is also a violation of the privacy rights of the plaintiff and a breach of legal duties.

11. Another important fact is that the Defendants had the legal authority, the capabilities, and resources to present an unbiased case to the state attorney for prosecution. Plaintiff's case and the assault perpetrated by a known felon was never presented to the state attorney's office see (**Exhibit 6**). Detective Stewart stated the State Attorney made the decision not to pursue due to lack of probable cause. The State Attorney's office had no record of my case, see exhibit 6. Instead, a collaborative effort by the Defendants discriminated against the Plaintiff, protected a white race citizen, also defamed, embarrassed, and caused emotional and mental affliction to the Plaintiff.

12. On August 4th, 2021 Lakeland Police Officer who took Plaintiff's original statement at the hospital presented Plaintiff with the Victims Right Brochure See (**Exhibit 7**)

13. . This LPD brochure specifically states:

   a.  *A victim has a right to due process and to be treated with fairness and respect for her/his dignity.*

   b.  *The right, within the judicial process, to be reasonably protected from the*

15

*accused and any person acting on behalf of the accused.* "Plaintiff was

harassed, stalked, tracked all while Plaintiff had no recourse as Plaintiff

alleges Detective Stewart was acting on behalf of the accused"

c. *The right to prevent disclosure of information or records that could be used to locate or harass you or your family, or which could disclose your confidential or privileged information.* Plaintiff alleges and seeks to prove Defendants violated this state constitutional right.

d. *The right to full and timely restitution in every case and from each convicted offender for all losses suffered, both directly and indirectly, because of the criminal conduct.*

e. *The right to proceedings free from unreasonable delay, and to a prompt and final conclusion of the case and any related post judgement proceedings.*

## **MEMORANDUM IN SUPPORT OF OPPOSITION TO MOTION TO DISMISS**

NOW come to the legal arguments in the light of aforementioned statements of facts. The

defendants' motion to dismiss must be dismissed on the basis of the following legal

grounds;

### **1: Motion to Dismiss Not Factually Supported Therefore Should Not Be Granted**

Under Federal Rules, a Plaintiff is not required to plead a legal theory. ***Vidimos,***

*Inc. v. Laser Lab*, 99 F.3d 217, 222 (7th Cir. 1996) ("The Federal Rules of Civil Procedure do not require a plaintiff to plead legal theories."). She must merely give the defendant and the court a fair idea of the legal grounds claimed for recovery. *Karpel*, 134 F.3d at 1227. "Many federal courts have held that a complaint is sufficient against a motion to dismiss under Rule 12(b)(6) if it appears from the complaint that the plaintiff may be entitled to any form of relief, even though the particular relief he has demanded and the theory on which he seems to rely are not appropriate." 5 **Charles A. Wright Arthur R. Miller,** *Federal Practice Procedure* **§ 1219 (3d ed. 2007).** *U.S. v. Gwinn,* **CIVIL ACTION No. 5:06-cv-00267, at \*17 (S.D.W. Va. Mar. 31, 2008).** Defendants requested an initial Motion to Dismiss under FR CP 12 (b) (6) with the knowledge that Plaintiffs allegations does entitle her to relief, now comes a second motion to dismiss under the claims of qualified immunity and for reasons that Plaintiff did not seek administrative relief before filing suit; again, Defendants filed a motion to dismiss in bad faith and as a legal maneuver, changing their stated position each time as to why the court should dismiss. Plaintiff equates this to the term "throwing spaghetti at the wall to see what sticks." Neither claim to dismiss is applicable or support Defendant's position factually.

If a plaintiff gives a fair idea of the legal grounds claimed for the relief, then that's should be sufficient. In the defendant's motion to dismiss the defendant made the process very complicated in that the plaintiff did not fulfill this and that requirement. These are not the basis to dismiss a complaint, the plaintiff has provided compelling allegations and

complaints based on legal grounds that establish that the Plaintiff can evidentiarily support the cause of actions brought forth and damages sought after are aligned with such relief.

## 2: The Defendant, Detective Steward is not protected under Qualified Immunity

Under color of Law Title 180 U S.C section 42 Deprivation of Rights, and Police Misconduct 34 U.S.C. 12601 establishes when state, local government officials, including police officers violate a clearly established natural legal or constitutional, right, there is no qualified immunity. The evolution of qualified immunity began in 1871 when Congress adopted 42 USC 1983 which makes government officials personally liable. A government employee is not entitled to governmental immunity if he or she is found to have acted with gross negligence in the performance of his or her duties. *Bletz*, 641 F.3d at 756 (citing *VanVorous*, 687 N.W.2d at 143, and *Livermore v. Lubelan*, 476 F.3d 397, 408 (6th Cir. 2007)). *Parker v. Spangler*, Case No.: 14-11067, at *21-22 (E.D. Mich. Aug. 11, 2015). A government employee is immune from tort liability, except for claims arising out of gross negligence if he/she acts within the scope of his employment. M.C.L. § 691.1407(2). Gross negligence is defined as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." M.C.L. §691.1407(8)(a) *Webb v. Urban*, Case No: 11-12830, at *6 (E.D. Mich. Apr. 27, 2015).

The onset of Plaintiff's injuries was initially evident physically, the unseen permanent injuries are mental and emotional impacting every aspect of Plaintiff's life.

These injuries were exasperated by Detective Stewart egregious conduct as if the assault was not horrific enough, the Lakeland Police Department represented by the Chief of Police and the City of Lakeland represented by Mayor William Mutz. Detective Stewart acted within the scope of her position, the decision by the Chief of Police not to take action, to consequently dismiss Plaintiffs complaints by not responding, and the actions or lack thereof by the City Mayor, and the city Commissioner were all within the scope of their positions.

Government employees are immune from tort liability "if they acted or reasonably believed they acted within the scope of their employment, engaged in the discharge of a government function, and their 'conduct did not amount to gross negligence that was the proximate cause of the injury or damage.'" *Reilly v. Vadlamudi*, **680 F.3d 617, 627.** Detective Stewarts decisive actions to ignore Plaintiffs plea for help after the violent sexual attack when she was stalked, harassed, apartment burglarized, retaliated against, subjected to other law enforcement oversight as a result of the LPD complaints, the decisive decisions by Detective Stewart, Chief Ruben Garcia, Mayor William Mutz when they made the decisions not to respond to multiple inquiries, when Supervisors decisively swept the victims case under the proverbial rug and violated every oath and officers and elected officials take to serve ALL citizens abated the right to qualified immunity.

**3: The defendants committed Negligence**

The plaintiff second legal claim of 'Negligence' against the defendants, is legitimate and has merit. The defendants claimed in the motion to dismiss that the plaintiff has exhausted her administrative remedies. This is a misrepresentation with mala fide intention before the court that the plaintiff did not use the administrative remedy available to her before to filing the civil suit. The plaintiff pleaded directly to the Mayor of the City of Lakeland William Mutz, Chief of Police Ruben Garcia, Commissioner Stephanie Madden, Sergeant Boone was captioned on the majority of emails to Detective Stewart, the Director of the Records Department was emailed multiple times and others in a supervisory position with the police department were engaged to investigate this gross negligence. The plaintiff also requested the Lakeland Police Department to conduct an internal affairs investigation against the gross negligence of the defendant Detective Stewart. Plaintiff followed the procedure for an internal affairs complaint and stated on the Lakeland Police Department website. The defendants committed negligence and breached their legal duties. In order to establish negligence, it is well-settled that a plaintiff must establish four essential elements, as follows:

1. A duty, or obligation, recognized by the law, requiring the [defendant] to conform to a certain standard of conduct, for the protection of others against unreasonable risks;

2. A failure on the [defendant's] part to conform to the standard required; a breach of duty;

3. A reasonably close causal connection between the conduct and the resulting

injury and;

4. Actual loss or damage resulting in the interests of another.

***Haines v. Honolulu Shipyard, Inc.*, 125 F. Supp. 2d 1020, 1026 (D. Haw. 2000)**

In light of the aforementioned case and the legal requirements to establish the negligence. The defendants are government employees and government institutions whose legal duty is to protect the best interest, rights, and welfare of the citizens. This is an undisputed fact that the defendants have a duty of care toward the plaintiff. The defendant breached this duty of care because they did not take any action against the gross negligence of the defendant Detective Stewart and also did not do their internal investigation. Defendants did not act on their duty to perform a fair and equality driven investigation into Plaintiff violent sexual assault, subsequent stalking, harassment and burglary casing further irreparable damage to Plaintiff. Plaintiff pleas to this Court for this to move forward to show the court, the extent of the gross negligence, the breach of duty, connection between the conduct and resulting injury to Plaintiff. It does appear this would not be the first time the violent offender was not held accountable by the Lakeland Police Department and Polk County Sheriff's Office. The collective defendants embraced the illegal actions of the Detective Stewart that caused severe economic and non-economic damages to the plaintiff.

**4: The defendant's action is a Discriminatory act with an intent**

Detective Stewart and the defendants of the Lakeland Police department, the Mayor and Commissioner as local government employees acted under color of law. In Monell v. New York City Dept. of Social Services, 436 U.S. 658 (1978) female employees of the Department of Social Services and the Board of Education of the City of New York, brought a class action against the Department and its Commissioner, the Board and its Chancellor, and the City of New York and its Mayor under 42 U.S.C. 1983, which provides that every "person" who, under color of any statute, ordinance, regulation, custom, or usage of any State subjects, or "causes to be subjected," any person to the deprivation of any federally protected rights, privileges, or immunities shall be civilly liable to the injured party. The main difference between the Plaintiff (The Victim) her attacker, members of the Lakeland Police Department that Plaintiff interacted with, the City of Lakeland's Mayor and the City of Lakeland's Commissioner are the color of their skin. Plaintiff is the only black person in the entire conundrum all others are Caucasians. The irony is, Plaintiff while treated as the criminal in a crime against her as no criminal history, the assailant treated as a victim, has an extensive violent criminal history See Exhibit

In the light of the aforementioned case law this is an undisputed fact that the plaintiff engaged in a protected activity. The defendants violated the rights of the plaintiff by not providing the benefits of the service. The plaintiff participated in the investigation and the defendant Stewart discriminated against the plaintiff and tried to protect the white race offender Mr. Smith. The defendant's City, Mayor, and former Police Chief discriminated against the plaintiff and protected the gross negligence of the defendant Stewart and also committed a discriminatory action to defame the plaintiff by publishing

the background information of the plaintiff.

**5: Plaintiff has actual damages so the Plaintiff is entitled to receive Punitive Damages**

The detailed statements of facts and arguments proved that the plaintiff has and is entitled to actual damages so the plaintiff has the legal right to get the punitive damages because this is a precedent set that a claim for punitive damages depends on actual damages being a recoverable or a basis for the recovery of compensatory damages.'" *Durham v. Johnson & Johnson, Inc.,*No. 3:20 CV-554, 2021 WL 3745730, at *5 (E.D. Tenn. Aug. 24, 2021) (quoting *Beal v. Walgreen Co.,*No. W2004-02925-COA-R3-CV, 2006 WL 59811, at *12 (Tenn. Ct. App. Jan. 12, 2006) *Kremer v. Reddit, Inc.,* 2:21-cv-00038, at *3 (M.D. Tenn. Sep. 14, 2022)

**6: The Plaintiff's Amended Complaint is not a shot gun pleading**

The defendants alleged that the Plaintiff's second amended complaint is a shot gun pleading void of any legal claim and without any cause of action. This is a precedent set that the plaintiff is not "required to plead facts establishing a prima facie case" *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 511 (2002). "In other words, a plaintiff is not charged with 'forecasting] evidence sufficient to prove an element' of her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 764-65 (4th Cir. 2003) (quoting *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir.2002)). "The prima facie case ... is an evidentiary standard, not a pleading requirement, that may require demonstrating more

elements than are otherwise required to state a claim for relief"; therefore, "requiring a plaintiff to plead a prima facie case would amount to a heightened pleading standard." *McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, **780 F.3d 582, 584 (4th Cir. 2015) (quoting** *Swierkiewicz,***534 U.S. at 510-12** *Ashley v. Milliken & Co.*, **Civil Action 7:21-2622-TMC-KFM, at \*5 (D.S.C. Nov. 9, 2021)**

The Supreme Court has held that under the notice pleading regime of federal court, a plaintiff is not required to plead facts that establish a prima facie case; the plaintiff must merely provide the defendant with fair notice of the basis for the claim. <u>Swierkiewicz</u>, **534 U.S. at 510-14.** *GROSS v. GAP, INC.*, **No. 06 C 3413, at \*5 (N.D. Ill. Apr. 5, 2007)** In the light of the aforementioned case laws this is justified that the plaintiff is not required to plead facts that establish a prima facie case; the plaintiff provided the fair legal grounds for the relief. The legal grounds established that the plaintiff has a valid cause of action and the entitle to damage awards. As a result, the defendants cannot allege that because the basic legal requirements or prima facie case is not established so the complaint is a short gun pleading or worthy to be dismissed.

## <u>SUMMARY</u>

The detailed statements of facts and memorandum of points, proved that the plaintiff has valid legal claims, legal grounds, cause of actions, and is entitled to all damages allowed by the Court. Plaintiff prays this Court does not grant the motion to dismiss at this stage because the Plaintiff has a number of facts and claims under which the plaintiff reserves the right to be heard in its entirety resulting in the basis for relief.

Plaintiff respectfully ask this Court to dismiss with prejudice the defendant's motion to dismiss the plaintiff's second amended complaint and award the compensation as prayed in the plaintiff's second amended complaint.

Respectfully Submitted By,

Charmaine Saunders
Pro Se Complainant

Dated this 14th day of February, 2023

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the February 14th, 2023, the foregoing Opposition to

Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint was submitted

electronically by ECF/CM filing to defendant's attorney of record.

Respectfully Submitted,

Charmaine Saunders
*Pro Se Complainant*

Date: February 14, 2023

# EXHIBIT

# 1





# EXHIBIT
# 2



# VICTIMS' RIGHTS BROCHURE
## Your Rights As A Victim Or Witness

We realize that for many persons being a victim or witness to a crime is their first experience with the criminal justice and juvenile justice systems. As a victim or witness, you have certain rights within the system. This brochure is being provided to assist with questions you may have regarding those rights. For further information regarding these rights, please contact the State Attorney's Office (SAO) and/or the appropriate law enforcement agency (LEA) handling your case.

OFFICER'S NAME & ID NUMBER:

_Den, tez #167_

CASE NUMBER:

_21- 13756_

**Lakeland Police Department**
863.834.8946

   

www.LakelandPD.com

## WHO IS A VICTIM?

"A victim is a person who suffers direct or threatened physical, psychological, or financial harm as a result of the commission or attempted commission of a crime or delinquent act or against whom the crime or delinquent act is committed.  The term victim includes the victim's lawful representative, the parent or guardian of a minor, or the next of kin of a homicide victim, except upon a showing that the interest of such individual would be in actual or potential conflict with the interests of the victim. The term "victim" does not include the accused." Article I, Section 16(b)[11], Florida Constitution

This brochure provides an overview of the criminal justice process and your rights within this process.  The person providing you this brochure may only handle a portion of the process.  The last page of this brochure provides contact information for agencies that can assist you.



## Charmaine Saunders Sexual Assault, Battery and Forced Sodomy July 27, 2021
1 message

**charmaine saunders** <charmainesaunders128@yahoo.com>                    Fri, Jul 15, 2022 at
                                                                            11:27 AM

To: leron.strong@lakelandgov.net <leron.strong@lakelandgov.net>,
paula.parker@lakelandgov.net <paula.parker@lakelandgov.net>, yahbriella.riley@lakelandgov.net
<yahbriella.riley@lakelandgov.net>, stephaniemadden@lakelandgov.net
<stephaniemadden@lakelandgov.net>

Good morning All,

The one year mark is fast approaching since my brutal attack by a known
criminal to both the Lakeland Police Department and the Polk County
Sheriffs Office.

Since reporting this crime against me, it is my belief that law enforcement
has engaged in a personal attack on my character and violated my basic
rights as a law abiding citizen of this country and as a victim of a heinous
crime. I filed complaints with the city's mayor and the chief of police, to no
avail. In return my life got worse. Instead of the crime against me being
investigated, I was investigated and the narrative spun to cover up a failure
to investigate the crime of sexual assault and a violation of my rights.

My basic right to bear arms was denied multiple times even while having an
out of state conceal license. My request to change my name due to this
attack and being stalked thereafter, was denied. My internet and wireless
devices were breached. The list goes on as to what has happened to me
since reporting the crime to LPD. The narrative is being spun that I am a
criminal. I am being told almost one year later FDLE has not processed the
bloody bedding, soiled towel, clothing, strawberry blond and black Hispanic
hairs on the bedding. I have been refused a copy of the police report. I was
called an uncooperative witness by the detective all while she was being
untruthful, derogatory, and violating every right I am supposed to be
protected by and entitled to.

# EXHIBIT

# 4



- Respect
- Integrity
- Teamwork
- Excellence

**Lakeland Police Department**

**Sammy Taylor, Jr.**
*Chief of Police*

December 5, 2022

Dr. Charmaine Saunders
P.O. Box 93536
Lakeland, FL 33804

Dear Dr. Saunders:

Our office, Lakeland Police Department Media Relations Unit, received your public records request for "…all records of dispatch to The Preserve at Lakeland Hills Apartments… for the period September 1, 2015 through October 1, 2022." Pursuant to FL State Statute 119, the list of calls for service at the address provided is attached.

Note, for specific apartment numbers to be listed, if available, I must review each individual incident (call for service) and corresponding case report, if applicable, to ensure any criminal investigations or pending criminal prosecution is completed and closed. An initial estimate to review each individual call for service is between 5 to 7 hours. The labor cost is $26.48 per hour. To proceed with the request, please remit payment in the amount of $132.40 (5 hours of labor). This is an initial estimate, should it take more or less time to complete the request, you would be notified. Once payment is received, I will review each incident and include an apartment number, as requested, if that information is available.

In addition to the above request, our office also received your request for "Full Unredacted Records Request Including Case Status and or Disposition" from the LPD case in which you are the reported victim. After reviewing the incident, I can advise that the case is still pending lab result(s) from the Florida Department of Law Enforcement (FDLE), so the case report(s) cannot be released at this time. However, once the case is closed (inactive and closed), I will contact you to provide the records.

Please feel free to contact me at 863-834-6947, by e-mail at Yahbriella.riley@lakelandgov.net, or by mail (Attn: Yahbriella Riley, LPD 219 N. Massachusetts Ave., Lakeland, FL 33801).

Sincerely,

Yahbriella Riley
Police Public Records Administrative Coordinator
Lakeland Police Department

PAYMENT INFORMATION

Payment methods excepted are check, credit/debit card, and cash. Check payment may be brought in or mailed to the attention of the Media Relations Unit to address below. Cash or credit/debit card payments can be made at our Records Department, Monday through Friday, 08:00 a.m. to 05:00 p.m. LPD physical and mailing address is: 219 N. Massachusetts Ave., Lakeland, FL 33801.

YR

# EXHIBIT
# 5



## Fw: Police Records Request :: W014179-083021

1 message

**charmaine saunders** <charmainesaunders128@yahoo.com>                    Thu, Jun 2, 2022 at
To: jbroomfield@fcasv.org <jbroomfield@fcasv.org>                                      10:07 PM

Sent from Yahoo Mail. Get the app

----- Forwarded Message -----
**From:** City of Lakeland Public Records Center <lakelandfl@mycusthelp.net>
**To:** charmainesaunders128@yahoo.com <charmainesaunders128@yahoo.com>
**Sent:** Monday, August 30, 2021, 12:08:04 PM EDT
**Subject:** Police Records Request :: W014179-083021


--- Please respond above this line ---

Good afternoon, Ms. Saunders.  I have been advised by our Records staff and am awaiting
confirmation of such from our Criminal Investigations staff that this remains an open
investigation by our agency.  As such, as the victim you are only entitled to the cover page of
the initial report at this time.  Records staff will be providing you with a copy.
FYI- there are no red light cameras at SR 33 & Old Combee Road and the "street cameras" do
not record, therefore we can not provide a response to the first portion of your request.
Everything else you've requested is confidential evidence until criminal discovery has been
completed by the prosecution and defense.  If you have a defense attorney or acquire one in
the future, they will request these remaining materials via the discovery process.  You do not
need to pursue copies yourself if you have an attorney representing you.
Please contact me with any questions.

Tom Trulson
Public Records Response Coordinator
Lakeland Police Department
p.863.834.6947



1. HOME
2. DEPARTMENTS
3. LAKELAND POLICE DEPARTMENT
4. TABLE OF ORGANIZATION
5. SPECIAL SERVICES
6. RED LIGHT CAMERA PROGRAM

# Red Light Camera Program

Red-light running is a serious intersection safety issue across the nation. The most recent figures show 709 people died and 126,000 were injured in red-light running crashes in the United States in 2014 alone, according to the Insurance Institute for Highway Safety. More than half of those people were innocent pedestrians, bicyclists and occupants in other cars. The purpose of this program is to increase overall traffic safety in the City of Lakeland by reducing red-light running violations, crashes, and injuries.

**WHAT ARE MY OPTIONS IF I RECEIVED A CITATION?**

**NEED A PAYMENT EXTENSION?**

43

## OTHER FREQUENTLY ASKED QUESTIONS

**Red Light Camera Intersections**

- NB N Florida Ave @ Memorial Blvd
- NB S Florida Ave @ E Beacon Rd
- NB Cleveland Heights Blvd @ E Edgewood Dr
- SB Cleveland Heights Blvd @ E Edgewood Dr
- NB Socrum Lp Rd @ Old Combee Rd
- SB Socrum Lp Rd @ Old Combee Rd          ← *EMAIL STATED NO CAMERAS*
- NB Socrum Lp Rd @ E Daughtery Rd / Walt Lp Rd
- SB Socrum Lp Rd @ E Daughtery Rd / Walt Lp Rd
- WB E Daughtery Rd / Walt Lp Rd @ Socrum Lp Rd
- NB Bartow Rd / US 98 @ N Crystal Lk
- SB Bartow Rd / US 98 @ N Crystal Lk
- EB E Memorial Blvd @ N Massachusetts Ave
- WB E Memorial Blvd @ N Massachusetts Ave
- NB US 98 @ Griffin Rd
- SB US 98 @ Griffin Rd
- SB Harden Blvd @ North Parkway Frontage Rd
- NB Harden Blvd @ W Beacon Rd
- WB W Memorial Blvd @ Martin L King Jr Ave / North Dakota Ave

*NB - Northbound    SB - Southbound    EB - Eastbound    WB - Westbound*

# EXHIBIT
# 6



## Fw: 2021-13756
5 messages

**charmaine saunders** <charmainesaunders128@yahoo.com>                    Fri, Dec 23, 2022 at 6:25 AM
To: charmainesaunders89@gmail.com <charmainesaunders89@gmail.com>

Sent from Yahoo Mail. Get the app

---- Forwarded Message ----
**From:** Stewart, Christina <christina.stewart@lakelandgov.net>
**To:** charmaine saunders <charmainesaunders128@yahoo.com>
**Cc:** Stewart, Christina <Christina.Stewart@lakelandgov.net>; Boone, Kelly <Kelly.Boone@lakelandgov.net>
**Sent:** Monday, November 7, 2022, 02:52:45 PM EST
**Subject:** 2021-13756

Good afternoon,

I am writing to update you on your investigation. In conclusion, upon review with the State Attorney's Office of the investigation and the evidence therein, at this time, it was determined that there was insufficient probable cause to charge Jeremy Smith with sexual battery.

It is important for your cooperation in this aspect of the investigation to review the video surveillance so we can discuss the evidence pertaining to your encounter with Mr. Smith. Therefore, if you decide to cooperate at any time, as previously noted, I will gladly arrange a date and time for you to view the video surveillance.

I have completed the police report. However, it remains open and inactive; if additional leads become available, the case will be re-opened and investigated further.

Respectfully,

Christina J. Stewart

Detective | Special Victims Unit

Lakeland Police Department

219 N. Massachusetts Avenue

Lakeland, FL 33801

City of Lakeland

p. 863.834.8977



## RE: [External] SAO10 General Contact Us Form

1 message

**SAO10 Mail** <sao10mail@sao10.com>                     Mon, Jan 30, 2023 at 3:28 PM
To: C S <charmainesaunders89@gmail.com>

We have looked by both names and nothing shows up with the State
Attorney's Office.  When a crime has been committed, the appropriate law
enforcement agency (LPD) will investigate the incident and refer the case to
the State Attorney's Office if there is sufficient evidence.  Please check back
with LPD for their report.

[Quoted text hidden]



## RE: [External] SAO10 General Contact Us Form

1 message

**SAO10 Mail** <sao10mail@sao10.com>                 Mon, Jan 30, 2023 at 8:14 AM
To: charmainesaunders89@gmail.com <charmainesaunders89@gmail.com>

Good morning,

Please provide the case number for the Jeremy Smith case.

Thank you,

State Attorney's Office


**From:** charmainesaunders89@gmail.com <sao10mail@sao10.com>
**Sent:** Sunday, January 29, 2023 11:52 AM
**To:** SAO10 Mail <sao10mail@SAO10.COM>
**Subject:** [External] SAO10 General Contact Us Form


Date Submitted: 01/29/2023

**Name**

    Charmaine Saunders

**Email**

    charmainesaunders89@gmail.com

**Phone**

    (863) 738-7920

**Contact me by**

Email

**Message**

On 7/27/21 I was violently assaulted my a historic criminal. I am told due to a lack of evidence
the state attorney Polk county decided not to pursue criminal charges. Kindly provide an
unredacted copy of the report and any support document that was the basis of the decision
not to charge Jeremy Smith

49



## RE: [External] SAO10 General Contact Us Form
1 message

**SAO10 Mail** <sao10mail@sao10.com>                    Mon, Jan 30, 2023 at 1:20 PM
To: C S <charmainesaunders89@gmail.com>

After a thorough search, our Records Department has been unable to locate
any records with the LPD case number you provided.  Please check with
Lakeland Police Department for the records you are requesting.

Thank you,

State Attorney's Office

[Quoted text hidden]



## RE: [External] SAO10 General Contact Us Form

1 message

**C S** <charmainesaunders89@gmail.com>                    Mon, Jan 30, 2023 at 10:41 AM
To: SAO10 Mail <sao10mail@sao10.com>

Good morning,

Lakeland Police department case
Number 2021-00013756.

Thanks,

Charmaine
[Quoted text hidden]

# EXHIBIT
# 7

## AS A CRIME VICTIM, THE FLORIDA CONSTITUTION GUARANTEES YOU THE FOLLOWING RIGHTS

Article 1, Section 16(b), Florida Constitution

- The right to due process and to be treated with fairness and respect for your dignity.

- The right to be free from intimidation, harassment, and abuse.

- The right, within the judicial process, to be reasonably protected from the accused and any person acting on behalf of the accused. However, this is not intended to create a special relationship between the crime victim and any law enforcement agency or office absent a special relationship or duty as defined by Florida law.

- The right to have your safety and welfare as well as your family's considered when setting bail, including setting pretrial release conditions that could affect you or your family's safety and welfare.

- The right to prevent the disclosure of information or records that could be used to locate or harass you or your family, or which could disclose your confidential or privileged information.

- The right to the prompt return of your property when no longer needed as evidence in the case.

- The right to full and timely restitution in every case and from each convicted offender for all losses you suffered, both directly and indirectly, because of the criminal conduct.

- The right to proceedings free from unreasonable delay, and to a prompt and final conclusion of the case and any related post judgment proceedings. (In appropriate cases, the prosecutor may file a good faith demand for a speedy trial. In non-capital cases, all state-level appeals and post-conviction proceedings must be complete within two years and five years for capital cases, unless the court enters an order with specific findings concerning why the court was unable to do so and the circumstances causing the delay.)

- The right to be informed of your state constitutional rights, and to be informed that you can seek the advice of an attorney with respect to your rights.